**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STELLA CAREY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00964-MAL |
| | ) | |
| CURIUM US LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Here, the Court considers Defendant Curium US LLC's Motion to Dismiss (Doc. 29) the First Amended Complaint ("Operative Complaint") (Doc. 26). The Motion to Dismiss, Doc. 29, is **GRANTED** in part and **DENIED** in part. It is **GRANTED** with respect to Count IV Unjust Enrichment, Count V Invasion of Privacy, and Count VI Declaratory Judgment and **DENIED** as to Count II Negligence *per se* and Count III Breach of Contract. With respect to Count I Negligence, the Motion to Dismiss (Doc. 29) is **GRANTED** as to Carey's negligence claim but **DENIED** as to Castillo's negligence claim.

### FACTS AND BACKGROUND[1]

The Defendant, Curium US LLC, is a pharmaceutical company specializing in radiopharmaceuticals. (Doc. 26 at ¶ 32). Plaintiff Stella Carey is a former Curium employee. *Id.* at ¶ 154. Plaintiff John Castillo "is unsure of his exact relationship with Curium but, upon information and belief, alleges he was a patient or received health-related services [f]rom Curium or through an affiliate of Curium." *Id.* at ¶ 169. Curium required both customers and employees to give Curium all or most of the following pieces of information: (1) name, (2) address, (3) phone number, (4) email address, (5) date of birth, (6) Social Security number, (7) marital status, (8) primary

[1] All facts pleaded in the complaint are assumed true when determining whether to dismiss counts under Rule 12(b)(6). *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011).

and secondary insurance policy holders' name, address, date of birth, and Social Security number, (9) demographic information, (10) driver's license or federal identification, (11) information relating to medical and insurance history, and (12) some combination of banking information and credit card information. (Doc. 16 at ¶ 6). Plaintiffs allege that they provided this information with the understanding that the information would be kept secure. *Id.* at ¶ 42.

In October 2024, Curium suffered a data breach that compromised the Plaintiffs' personally identifiable information ("PII"). *Id.* at ¶ 1. Those affected by the data breach are at risk of identity theft because their PII is currently in the hands of cybercriminals. *Id.* at ¶ 18. The cybercriminals published Plaintiffs' information on the dark web. *Id.* at ¶ 57. These circumstances have forced Plaintiffs to spend time and money taking preventive measures to mitigate the risk of identity theft. *Id.* at ¶¶ 139–146.

## PROCEDURAL HISTORY

Plaintiff Stella Carey filed suit against Curium. (Doc. 1). The case was then consolidated with a case filed by Plaintiff John Castillo against Curium. (Doc. 12). Upon consolidation, Carey and Castillo filed a joint complaint. (Doc. 13). They have since amended that joint complaint. (Doc. 26). The Operative Complaint is a putative class action seeking to represent a nationwide class of "[a]ll persons whose Private Information was compromised as a result of the Data Breach discovered by Curium US in October 2024 including those that received notice (the "Class")." *Id.* ¶ 202. The Operative Complaint alleges:

<u>Counts I</u>: Negligence. *Id.* at ¶¶ 214–238

<u>Count II</u>: Negligence *per se*. *Id.* at ¶¶ 239–253.

<u>Count III</u>: Breach of Implied Contract. *Id.* at ¶¶ 254–268.

<u>Count IV</u>: Unjust Enrichment. *Id.* at ¶¶ 269–280.

<u>Count V:</u> Invasion of Privacy. *Id* at ¶¶ 281–292.

<u>Count VI:</u> Declaratory Relief. *Id.* at ¶¶ 293–301.

In the Motion to Dismiss, Curium moves to dismiss the Operative Complaint for lack of subject matter jurisdiction and failure to state a claim. (Doc. 29).

## Motion to Dismiss for Lack of Subject Matter Jurisdiction (Article III Standing)

Curium moves to dismiss for lack of subject matter jurisdiction on the grounds that Plaintiffs lack Article III standing. Specifically, Curium claims that (1) there is no injury-in-fact,[2] (2) the injury is not fairly traceable to Curium,[3] and (3) that any injury cannot be redressed.[4] The Court finds that Plaintiffs have Article III standing for their claims of (A) breach of implied contract, (B) unjust enrichment, (C) negligence, (D) negligence *per se*, and (E) invasion of privacy. Plaintiffs lack Article III standing for the requested injunctive relief and for declaratory judgment.

### I. Standard

Federal Rule of Civil Procedure 12(b)(1) enables a defendant to challenge the Court's subject matter jurisdiction. To justify dismissal under Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In such a challenge, the defendant claims that the complaint "fails to allege an element necessary for subject matter jurisdiction." *Id.* The Court accepts as true "all of the factual allegations concerning jurisdiction" and evaluates the arguments only on their legal merits. *Id.*

Questions of subject matter jurisdiction include whether a plaintiff has Article III standing to sue. *Doe v. Nixon*, 716 F.3d 1041, 1047 (8th Cir. 2013) (citation omitted). "Each plaintiff must establish standing for each form of relief sought." *Miller v. Thurston*, 967 F.3d 727, 734 (8th Cir. 2020) (citing *Town of Chester v. Laroe Estates, Inc.*, 531 U.S. 433, 439 (2017)). Plaintiffs "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "On a motion to dismiss, therefore, the plaintiffs must allege sufficient facts to support a reasonable inference that they

---

[2] Doc. 30 at 12.
[3] Doc. 30 at 17–18.
[4] Doc. 30 at 18

can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021) (citation omitted).

To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). The Supreme Court's "standing decisions make clear that standing is not dispensed in gross . . . [A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017) (citation modified).

## II. Discussion

### A. Injury in Fact

Curium argues that Carey and Castillo have not suffered concrete injury sufficient to support any of their claims. (Doc. 30 at 12). The Court agrees that Carey and Castillo have not alleged concrete injury sufficient to support their claims for injunctive relief and declaratory judgment. But Carey and Castillo have alleged concrete injuries sufficient to support their claims for (1) breach of implied contract, (2) unjust enrichment, (3) invasion of privacy, (4) negligence, (5) negligence *per se*.

#### ***1. Carey and Castillo allege injury sufficient to support standing to pursue their breach of implied contract claims.***

Both Carey and Castillo have standing for the breach of implied contract claim. Curium concedes this point. *See* Doc. 32 at 10–11. The Court agrees. "Whatever the merits of [the] contract claim, . . . [a plaintiff] has Article III standing to assert [it]." *Kuhns v. Scottrade*, Inc., 868 F.3d 711, 718 (8th Cir. 2017).

#### ***2. Carey and Castillo allege injury sufficient to support standing to pursue the unjust enrichment claims.***

Carey and Castillo also have standing for their unjust enrichment claim. Curium also concedes this point. *See* Doc. 32 at 10-11. The Court agrees. *See Kuhns*, 868 F.3d at 718 ("Whatever the merits of [the] . . . claim . . . for . . . unjust enrichment, [they have] Article III standing to assert [it].").

### *3. Carey and Castillo allege injury sufficient to support standing for their negligence claims.*

The lost time and expense incurred to mitigate the risk of future harm constitutes a concrete injury sufficient to support the negligence claim's request for damages. Carey and Castillo both allege they lost time (Doc. 26 at ¶¶ 12, 135–139, 140–146) and money (Doc. 26 at ¶¶ 146, 235) mitigating the harm of the data breach. Curium argues that this cannot establish standing because time spent responding to a speculative risk cannot create an injury. (Doc. 30 at 14). The Court understands Curium as arguing that the risk is too speculative because, at filing, a year had passed without incident and any future harm requires speculating as to the hacker's future actions and motivation. (Doc. 30 at 12–14). And it is true that efforts to mitigate a risk constitute an injury only if there is a substantial risk the injury will occur. *In re SuperValu, Inc.,* 870 F.3d 763, 771 (8th Cir. 2017) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). The risk here meets this threshold.

First, finding that there is a substantial risk of identity theft here does not unduly speculate about the actions of third parties. It is reasonable to assume that hackers steal personally identifiable information for identity theft or fraud or to sell the information to others who intend to use the information for those purposes. *Galaria v. Nationwide Mut. Ins. Co.,* 663 F. App'x 384, 388 (6th Cir. 2016). Second, the Court finds persuasive numerous holdings in this circuit's district courts that theft of highly exploitable PII like social security numbers indicates a substantial risk of future injury. *Negron v. Ascension Health*, No. 4:24-CV-00669-JAR, 2025 WL 2710014, at *5 (E.D. Mo. Sept. 23, 2025) (collecting cases); *Colley v. Neighbors Credit Union*, No. 4:25-CV-00687-SRC, 2026 WL 864583, at *4 (E.D. Mo. Mar. 30, 2026) (post-*Negron* case finding theft and publication on the dark web indicated the existence of a substantial risk); *compare In re SuperValu, Inc.,* 870 F.3d at 771 (future risk not adequately alleged when payment card information stolen but PII like social security numbers, birth dates, or driver's license numbers were not, as these latter categories of information are necessary to open new accounts).

Curium argues that these cases should not change the outcome because many included allegations that stolen PII was actually misused. (Doc. 32 at 9) (noting that *Negron* and *Weisenberger v. Ameritas Mut. Holding Co.,* 597 F. Supp. 3d 1351, 1358–59 (D. Neb. 2022), included allegations that fraud already occurred); *see also Negron*, 2025 WL 2710014, at *6 (citing incidents of suspicious bank and credit activity in future injury analysis); *Weisenberger v. Ameritas Mut. Holding Co.,* 597 F. Supp. 3d 1351, 1358–59 (D. Neb. 2022) (noting, separately from the future standing analysis, that credit card fraud had already occurred).[5] While an allegation that a plaintiff suffered fraud makes it more probable that plaintiffs will suffer fraud in the future, this appears to be a factor in a holistic analysis of the probability harm will occur rather than a requirement for such a finding. *See Negron*, 2025 WL 2710014 at *6; *see also In re SuperValu, Inc.,* 870 F.3d at 770 (conducting specific fact-intensive inquiry to determine if plaintiff adequately pled future harm rather than relying on bright line requirement that plaintiff suffered actual fraud).

Finally, Curium is correct that passage of time without incident weighs in favor of finding speculative risk, but this consideration is not necessarily dispositive. *See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017). While this is a close call given that about a year elapsed between the date of the data breach and the date Curium filed a motion to dismiss without actual fraud, the Court finds that there remains a substantial risk of future harm, and the time and money spent mitigating the risk constituted a concrete injury.

#### ***4. Carey and Castillo allege injury sufficient to support standing for their negligence per se claims.***

Similarly, Carey and Castillo have alleged injury sufficient to support standing for their negligence *per se* claim. Carey and Castillo allege Curium's violation of

[5] Curium includes *Harris v. Mercy Health Network, Inc.*, No. 4:23-CV-00195-SHL-SBJ, 2024 WL 5055556 (S.D. Iowa June 26, 2024), in this category also. (Doc. 32 at 9). But Carey cites *Harris* for her argument that publication on the dark web establishes standing, not to support her argument regarding future injury. (Doc. 31 at 11–12). The *Harris* court did not explain how information being found on the dark web changed the future injury analysis. 2024 WL 5055556, at *8. Rather, they found that publication on the dark web contributed to a finding that a present injury existed. *Id.*

Section 5 of the FTCA and HUPAA constitutes negligence *per se*. Doc. 26 ¶ 253. As a result of these violations, Carey and Castillo allege that they have been injured in numerous ways, including "lost time" and expense incurred to mitigate the risk of future harm. As stated in Part II.A.3, these injuries are sufficiently concrete. Carey and Castillo have Article III standing to pursue their negligence *per se* claim.

***5. Carey and Castillo allege injury sufficient to support standing for their invasion of privacy claim.***

Carey and Castillo have attempted to withdraw their invasion of privacy claim. (Doc. 31 at 22). However, they cite no authority with which to do so. Rule 41 cannot govern the withdrawal because "when multiple claims are filed against a particular defendant, Rule 41(a) is applicable only to the voluntary dismissal of all claims against the defendant." 9 Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 2362 (4th ed. 2026). A Plaintiff can move to amend his complaint to remove a particular claim, but the Plaintiffs here have not done so. *Id.* (many courts "have indicated that a plaintiff who wishes to eliminate some claims but not others should do so by moving to amend pursuant to Rule 15."); *see also Miller v. Madison Cnty. Bd of Comm'rs*, No. 1:21-cv-02609-JMS-MJD, 2023 WL 2837867, at *12 n.15 (S.D. Ind. Apr. 7, 2023) ("Generally, an attempt to voluntarily dismiss only certain counts of a complaint should be treated as a motion to amend the complaint rather than a motion to dismiss.") (citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362 (3d ed. 2009)); *Rosell v. VMSB*, 67 F.4th 1141, 1143 (11th Cir. 2023). This court has not found any authority that allows a plaintiff to withdraw a claim in the manner done so by the Plaintiffs in this case. Therefore, the invasion of privacy claim remains in the action. For the same reasons as those in Part II.A.3 (negligence), above, there is sufficient injury for an invasion of privacy claim. Doc. 26 at ¶ 197.

***6. Carey and Castillo do not allege an actual injury sufficient to support standing for their request for injunctive relief.***

But the risk of future harm is an insufficient actual injury to support Carey's claims for injunctive relief. In response to the breach of implied contract count and

the invasion of privacy count, the Operative Complaint requests that this Court require Curium to (1) strengthen its data security systems and monitoring procedures, (2) submit to future annual audits of those systems and monitoring procedures, and (3) immediately provide adequate long-term credit monitoring to all Class Members for a period longer than the one year currently offered. Doc. 26 at ¶¶ 268, 290.

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 185 (2000). Therefore, a plaintiff who has standing to seek damages "does not necessarily" have standing to seek injunctive relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). "A person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 435. "In future injury cases, the plaintiff must demonstrate that the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Supervalu, Inc.*, 870 F.3d at 769. A plaintiff must show that the "threat of injury" is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quotations omitted). Carey and Castillo have not met this standard.

Carey and Castillo request injunctive relief due to concern about "another data breach." (Doc. 26 at ¶ 299). They allege that "if another massive data breach occurs at Curium, Plaintiffs and class members will likely be subjected to fraud, [identity] theft, and other harms described herein." *Id.* at ¶ 300. But Carey and Castillo do not allege any facts indicating that the risk of another data breach is "imminent and substantial." *TransUnion LLC*, 594 U.S. at 436. Carey and Castillo plead no facts indicating that Curium is a special target for cybercriminals or that they are "uniquely vulnerable to incursions." *Hall v. Centerspace, LP*, No. 22-cv-2028-KMM-DJF, 2023 WL 3435100, at *4 (D. Minn. May 12, 2023) (denying injunctive relief where "there are no facts in the Complaint that indicate a second data breach is certainly impending, or even that there is substantial risk one will occur"). "[A]n

injunction requiring [a defendant] to improve its cybersecurity systems cannot protect the plaintiffs from future misuse of their PII by the individuals they allege now possess it. Any such relief would safeguard only against a future breach." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 378 (1st Cir. 2023). And Curium "faces much the same risk of future cyberhacking as virtually every holder of private data." *Id.*

Injunctive relief is not warranted here because Carey and Castello have not shown that the threat of future injury is imminent. Thus, Carey and Castello lack standing to request injunctive relief.

### *7. Carey and Castillo do not allege injury sufficient to support standing for the declaratory judgment claim.*

Carey and Castillo also lack standing to assert their claim for declaratory judgment. A party has standing to seek declaratory relief when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). In this case, Carey requests a declaratory judgment that:

a. Curium's current cybersecurity is inadequate and fails to meet its obligations under statute, contract, and common law;
b. Curium continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various state statutes; and
c. Curium continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

Doc. 26 at ¶ 297.

Curium argues that Carey and Castillo lack standing to seek declaratory judgment relief here because they do not adequately allege that Curium is at risk of a second data incident or that there is a substantial risk one would occur. (Doc. 30 at

17). Carey and Castillo state that another breach is "real, immediate, and substantial." Doc. 26 at ¶ 299. But, as stated in part II.A.6, they allege no facts indicating this to be the case. *See generally* Doc. 26.

Considering that Carey and Castillo have not alleged a substantial risk of a second data breach, there is not a substantial and immediate controversy concerning Curium's legal obligations related to data security measures. *See* Doc. 26 at ¶ 293 (seeking this). Therefore, the request for declaratory judgment is denied.

**B. The concrete injury was fairly traceable to Curium.**

Each of the claims that have a sufficient injury for standing are also sufficiently traceable to Curium for standing to exist. "An injury is fairly traceable if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not. . . the result of the independent action of some third party not before the court.'" *In re SuperValu, Inc.*, 870 F.3d at 768 (quoting *Lujan*, 504 U.S. at 560) (cleaned up).

Curium argues that Carey and Castillo have not adequately alleged a traceable injury because they rely on existence of the data breach to prove that Curium caused it. (Doc. 30 at 17–18). But this is not what they allege. Carey and Castillo not only allege that Curium failed to implement adequate safeguards but also list the safeguards they believe should have been implemented. *See* (Doc. 26 at ¶¶ 58–64). They further allege that the data breach was the result of the failure to implement these security measures. *Id.* at ¶ 13. Finally, Carey and Castillo allege that this data breach was the cause of injuries, including those discussed above. *Id.* at ¶ 12. This is enough. *See In re SuperValu, Inc.*, 870 F.3d at 772 (damages fairly traceable when plaintiff alleges failure to take adequate precaution caused data breach and data breach caused plaintiff's damages).

**C. The alleged injuries are redressable.**

The final requirement for standing is that the injury can be redressed or cured by a favorable decision issued by a court. *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021). Curium argues that this standard is not met because Carey and Castillo fail to allege quantifiable damage or loss. (Doc. 30 at 18). This argument

fails because Carey and Castillo plausibly allege they lost money mitigating the harm from the breach. (Doc. 26 at ¶¶ 21, 167). Lost money is clearly quantifiable and redressable.

## III. Conclusion

As discussed, Carey and Castillo have standing to assert their claims for (1) breach of implied contract, (2) unjust enrichment, (3) invasion of privacy, (4) negligence, and (5) negligence *per se*. Because Carey and Castillo lack standing for their claims for injunctive relief and declaratory judgment, those claims are dismissed.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## I. Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (citation omitted). At this stage, the Court accepts as true the factual allegations in the complaint. *Id.* at 556.

Determining if well-pled factual allegations state a "plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The well-pled facts must establish more than a "mere possibility of misconduct." *Id*.

## II. Discussion

Plaintiffs bring six counts in their complaint: (1) negligence, (2) negligence *per se*, (3) breach of implied contract, (4) unjust enrichment, (5) invasion of privacy, and (6) declaratory judgment. (Doc. 26 at ¶ 22). In its Motion to Dismiss, Curium argues that none of the six counts successfully state a claim. (Doc. 29 at 1–2).

### A. Negligence and Negligence *Per Se*

In Counts I and II, the Plaintiffs bring negligence and negligence *per se* claims, respectively. (Doc. 26 at ¶¶ 214–253). Curium moves to dismiss both counts. (Doc. 30 at 12). Curium argues that both claims should be dismissed for two independent reasons: (1) because Plaintiffs fail to plead cognizable damages and (2) because the economic loss doctrine bars recovery. Curium further argues that the negligence theory must be dismissed because Curium did not owe a duty of care to Carey and Castillo—to the extent it did—violation of the duty was not the proximate cause of the damages. (Doc. 30 at 21). With respect to negligence *per se*, Curium argues that this claim cannot be premised on a violation of HIPAA because HIPAA does not contain a private right of action. (Doc. 30 at 20–21).[6]

#### *1. Arguments applicable to both claims.*

##### a. Plaintiffs adequately pled damages.

Contrary to Curium's arguments, Plaintiffs adequately pled damages. "A petition in a negligence case must state facts demonstrating a duty owing from the defendant to the plaintiff, a breach of duty, and damages as a result." *Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. 1988) (citing *Virginia D. v. Madesco Inv. Corp.,* 648 S.W.2d 881, 886 (Mo. 1983). Negligence *per se* has the same damages

[6] Carey and Castillo initially asserted negligence *per se* claims under the Federal Trade Commission Act, 15 U.S.C. 45(a). (Doc. 26 at ¶ 240). They have since withdrawn those claims. Doc. 31 at 20 n.3.

requirement as ordinary negligence. *See Lowdermilk v. Vescovo Bldg. & Realty Co.,* 91 S.W.3d 617, 628 (Mo. App. 2002). Curium argues that Plaintiffs failed to plead damages sufficient to support a negligence action because Plaintiffs failed to allege damages sufficient to support standing. (Doc. 30 at 19–20); *see also* (Doc. 32 at 7 (clarifying that their challenge rests on the lack of Article III injury). As discussed *supra*, Plaintiffs pled an injury sufficient to support standing. *See* Section II(A)(2). The Court will not dismiss the claim on this basis.

**b. The economic loss doctrine does not bar recovery.**

Nor does the economic loss doctrine bar recovery here. "The economic loss doctrine prohibits a party 'from seeking to recover in tort for economic losses that are contractual in nature.'" *Graham Const. Servs. v. Hammer & Steel Inc.,* 755 F.3d 611, 616 (8th Cir. 2014) (quoting *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.,* 332 S.W.3d 184, 192 (Mo. App. 2010)). This doctrine is read narrowly in Missouri.[7]

In this case, the economic loss doctrine is inapplicable because some alleged losses are not contractual in nature. Though Carey has pled that data security was covered by implied contract, Carey is entitled to plead theories in the alternative. *See* Fed. R. Civ. P. 8(d)(2). A jury could determine that there was no implied contract, which would permit negligence claims. Thus, the economic loss doctrine does not apply.

***2. Negligence***

Next, the Court addresses Curium's arguments that Curium did not owe Plaintiffs a duty of care and that Curium did not proximately cause the injury to Plaintiffs. (Doc. 30 at 21–24).

---

[7] *See Dunne v. Res. Converting, LLC,* 991 F.3d 931, 943 (8th Cir. 2021) (noting economic loss doctrine has not been applied outside UCC context and predicting that if the Missouri Supreme Court were to do so, it would be in a limited fashion); *see also Dannix Painting, LLC v. Sherwin-Williams Co.,* 732 F.3d 902, 905–06 (8th Cir. 2013) (describing economic loss doctrine as doctrine applying to "commercial buyer[s] of goods" created to protect the UCC); *Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C.,* 331 S.W.3d 648, 652 n.2 (Mo. 2011) (economic loss doctrine does not apply when duty arises from special relationship rather than contract).

**a. Duty of Care**

The Court addresses the duty of care issue first. "To establish a negligence claim under Missouri law, a plaintiff must prove: (1) the existence of a duty; (2) a breach of that duty; (3) causation; and (4) injury." *Aaron v. Nat'l R.R. Passenger Corp.*, 163 F.4th 503, 508 (8th Cir. 2025) (citing *Madden v. C & K Barbecue Carryout*, 758 S.W.2d 59, 61 (Mo. 1988)). In support of Curium's argument that it owed neither Plaintiff a duty of care, Curium claims that any duty must come from a special relationship between it and Plaintiffs, and because neither party adequately pled the existence of a special relationship, the claim must be dismissed. Curium is correct that a duty to safeguard information from third parties must come from a special relationship and that Carey does not have a cognizable special relationship with Curium. But Curium did have a special relationship with Castillo.

In Missouri, there is no general duty to safeguard information from cyberattack. "A duty of care arises when 'there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'" *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. 2023) (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.,* 75 S.W.3d 247, 257 (Mo. 2002)). "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (citation modified). "There are limited exceptions to the general rule, however, when special facts and circumstances render injury foreseeable in a given case." *Harner,* 679 S.W.3d at 484. But no such exception exists in the context of cyberattacks. "[N]o court applying Missouri law appears to have recognized a general, common law duty to safeguard information from a criminal cyberattack." *Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *6 (E.D. Mo. Aug. 3, 2021). While the Court in *Mackey* found a duty to safeguard information from a criminal cyberattack, it relied on the existence of a special relationship: the employer/employee relationship. *Id.*; *Colley*, 2026 WL 864583 at *12–13 (distinguishing *Mackey* and finding no duty of care for cybersecurity). "[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state

precedent[,] and our review of related [Missouri] law does not foreshadow such an expansion." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) (citation omitted). The Court declines to find an exception to the general rule and create a new duty of care. *See Colley*, 2026 WL 864583, at *13. Thus, whether Curium owed a duty to either plaintiff depends on whether Curium had a special relationship with them.

The duty analysis is different for each plaintiff because they have different relationships with Curium. Carey is a former Curium employee. (Doc. 26 at ¶ 154). Castillo is unsure of his relationship with Curium but believes he was a patient. *Id.* at ¶ 169. The patient/provider relationship that Curium allegedly has with Castillo creates a duty of confidentiality and therefore a cause of action in negligence if that duty is breached. *Brandt v. Med. Def. Assocs.,* 856 S.W.2d 667, 674 (Mo. 1993) (superseded by statute on other grounds); *see also J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.,* 675 S.W.3d 259, 266 (Mo. App. 2023) (dicta characterizing *Brandt* as holding this); *O.S. v. Mid Am. Physician Servs.*, LLC, No. 4:25-CV-00685-RK, 2026 WL 988513, at *5 (W.D. Mo. Apr. 13, 2026) (finding duty to guard against cyberattacks due to physician patient relationship).

Curium argues that Castillo's allegation upon information and belief that he was a patient is insufficient to establish that Castillo was a patient. (Doc. 32 at 13). But allegations based on information and belief are sufficient on a motion to dismiss if factual material renders the inference plausible. *Ahern Rentals, Inc. v. EquipmentShare.com*, Inc., 59 F.4th 948, 954 (8th Cir. 2023). Here, Castillo alleges that he received a letter stating that files containing personal information, including medical information, were compromised in a data breach. (Doc. 26 at ¶ 170). It is plausible to infer that if a person has their medical information on file with a healthcare company, and the person does not remember their relationship with the company (which renders the alternate inference that they were an employee unreasonable), the person was a patient treated by the company.

Whether Curium owed a duty to Carey is a closer question. In a closely analogous case, the Court in *Mackey* found that the employer/employee relationship

was a special relationship that created a duty to defend against cyberattacks. *Mackey*, 2021 WL 3363174 at *6. While there are a significant number of cases listing the employer-employee relationship as a special relationship, "we have found no Missouri case holding that the employer-employee relationship should be considered a special relationship justifying departure from the general 'no duty' rule." *Earley v. Dunn*, 670 S.W.3d 47, 51 (Mo. App. 2023). "Instead, the concept appears to have come into [Missouri] jurisprudence simply by being included, without elaboration, in a list of the types of relationships that can fit within the special relationship exception." *Id.* After an exhaustive analysis of employer-employee cases involving third party criminal acts, the court in *Earley* concluded that a business does not owe a special duty to its employees. *Id.* at 53. The Court finds this analysis persuasive. Thus, Curium has no special relationship with Carey, meaning that the Court will dismiss Carey's negligence claim against Curium for lack of a duty. But because Curium had a special relationship with Castillo, this Court denies the motion to dismiss Castillo's negligence claim.

**b. Proximate Cause**

Next, the Court addresses Curium's argument that its alleged negligence was not the proximate cause of Castillo's damages (the Court does not address Carey here because of the duty analysis above). "The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Stanley v. City of Indep.,* 995 S.W.2d 485, 488 (Mo. 1999) (citing *State ex rel. Mo. Highway and Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998)). "This is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct." *Robinson v. Missouri State Highway & Transp. Comm'n*, 24 S.W.3d 67, 78 (Mo. App. 2000). Curium argues that it is not the proximate cause of Castillo's damages because Plaintiffs failed to allege any facts showing the data breach was a "reasonable or probable consequence of act or omission by Curium. (Doc. 30 at 23). This argument fails.

Curium argues that Castillo must plead facts to plausibly show that Curium could have anticipated this particular incident. (Doc. 30 at 23). But the test for proximate cause does not require this degree of specificity. *See Kingman v. Dillard's Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) ("[T]he test for proximate cause is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant.") (citing *Robinson*, 24 S.W.3d at 78). Castillo has alleged sufficient facts to show that his injuries were a "natural or probable consequence" of Curium's conduct. *Stanley*, 995 S.W.3d at 488. Castillo claims that Curium mishandled his PII and failed to promptly inform him of the data breach. (Doc. 26 at 230). As a result of Curium's conduct, Castillo alleges to have suffered various injuries, including lost time and money, as a result of the data breach. (Doc. 26 ¶¶ 177–183, 186). "It is reasonable to infer that the data breach was a probable consequence of" Curium's "alleged failure to protect" Castillo's "Private Information." *See T.R. v. Clay-Platte Family Medicine, P.C.*, 2025 WL 3143638, at *6 (W.D. Mo. Nov. 3, 2025). Because Castillo's alleged injuries are a reasonable consequence of Curium's alleged conduct, proximate cause is satisfied.

* * *

Consequently, the Motion to Dismiss Count I, Negligence, is granted as to Carey but denied as to Castillo.

***3. Negligence per se***

Next, Curium argues that Carey and Castillo's negligence *per se* claims fail because HIPAA and the FTC Act lack a private right of action. (Doc. 30 at 21). Because a private right of action is not a requirement to prevail on a negligence *per se* claim, Curium's argument fails.

When a federal court sits in diversity, as here, it applies state law. *Maxus Metro., LLC v. Travelers Prop. Cas. Co. of Am.*, 163 F.4th 441, 449 (8th Cir. 2025) (citing *Sanborn Savings Bank v. Freed*, 38 F.4th 672, 677 (8th Cir. 2022). Federal courts should not expand state law "in ways not foreshadowed by state precedent." *Ashley Cnty.*, 552 F.3d at 673. In the absence of state supreme court precedent on an

issue, federal courts must predict, to the best of their ability, how the state supreme court would rule on the same issue. *Ringhofer v. Mayo Clinic, Ambulance,* 102 F.4th 894, 903 (8th Cir. 2024). The parties agree that Missouri law applies to the common law claims. *See* (Doc. 30 at 9) (Curium applying Missouri law); (Doc. 31 at 21) (Carey applying Missouri law).

The Missouri Supreme Court has held that "violations of statutes and administrative rules may constitute negligence *per se*." *Parr v. Breeden*, 489 S.W.3d 774, 781 (Mo. 2016). "The rationale behind this principle is that the statute or rule is a legislative or administrative pronouncement of the standard of care; therefore, a violation of the statute or rule constitutes a breach of the duty of care." *Id.* A negligence *per se* claim requires plaintiffs to plead "that defendants violated a specific statute or regulation and that the injury complained of was the kind the statute or regulation was designed to prevent." *Id.*

At least one Missouri court of appeals has held that only statutes creating a private cause of action may underlie a negligence *per se* claim. *Howland v. Truman Med. Ctr., Inc.,* 719 S.W.3d 98, 109 (Mo. App. 2025) (HIPPA cannot form the basis of a negligence *per se* claim because "only those statutes which create a private right of action can form the basis for a negligence *per se* claim."); *see also Colley*, 2026 WL 864583, at *13. But at least one other Missouri court expressly eschews this requirement. *J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*, 539 S.W.3d 849, 866 n.13, 867–69 (Mo. App. 2017) ("[T]here is a difference between whether a statute creates a private right of action . . . and whether a statute establishes a standard of care supporting . . . negligence *per se*"); *see also Negron v. Ascension Health,* No. 4:24-CV-00669-JAR, 2025 WL 2710014, at *10 (E.D. Mo. Sept. 23, 2025) ([Defendant] posits that a plaintiff must have a statutory claim in order to also have a negligence claim. This is incorrect."). And numerous Missouri courts address negligence *per se* without addressing this alleged requirement, including the Missouri Supreme Court. *See, e.g.*, *Parr*, 489 S.W.3d at 781; *McKinney v. H.M.K.G. & C., Inc.*, 123 S.W.3d 274, 278 (Mo. App. 2003); *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 512 (Mo. App. 2013); *Martinez v. Kilroy Was Here LLC*, 551

S.W.3d 491, 496 (Mo. App. 2018); *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 97 (Mo. App. 2015). When these courts—including the Missouri Supreme Court—list out the elements required for a negligence *per se* claim, these elements include: "1) a violation of a statute or ordinance; 2) the injured party must be within the class of persons intended to be protected by the statute or ordinance; 3) the injury complained of must be of the nature that the statute or ordinance was designed to prevent; and 4) the violation of the statute or ordinance must be the proximate cause of the injury." *J.J.'s Bar & Grill, Inc.*, 539 S.W.3d at 869 (quoting *Lowdermilk,* 91 S.W.3d at 628); *Parr*, 489 S.W.3d at 781 (Missouri Supreme Court holding the same). Because the Missouri Supreme Court does not appear to believe that a private right of action is a requirement for a negligence *per se* action, the Court will not dismiss this claim for failure to meet this purported requirement.

**B. The Complaint states a claim for Count III, breach of implied contract.**

Next, Curium moves to dismiss Carey and Castillo's breach of implied contract claims. Curium argues that these claims should be dismissed because (1) Carey and Castillo fail to plausibly allege the terms of the contract or how those terms were breached, (2) Carey and Castillo fail to allege mutual consent, (3) Carey and Castillo fail to allege consideration, and (4) the breach of implied contract claims lack a cognizable injury. (Doc. 30 at 25–27). Because Curium's arguments fail, the Court denies the motion to dismiss Plaintiffs' claim for breach of implied contract.

"A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Bell v. Shelter Gen. Ins. Co.,* 701 S.W.3d 614, 618 (Mo. 2024) (quoting *Keveney v. Mo. Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010)). For an agreement to be actionable under Missouri law, it must be "specific enough to determine when one of the parties is in breach and provide[ ] a basis for giving a remedy." *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.,* 347 F.3d 1052, 1054 (8th Cir. 2003).

**1. Terms of contract and breach thereof**

Carey appears to allege multiple similar alternative theories of what the contract contained. *Cf.* (Doc. 26 at ¶ 256 *with* ¶¶ 257–259 *and* ¶¶ 261–262). At least one of these theories is sufficiently definitive to constitute a contract and a breach thereof. Carey alleges that Curium ". . .promised to comply with industry standards." (Doc. 26 at ¶ 257). She further alleges that Curium failed to do so and alleges what these standards include. *Id.* at ¶¶ 111–116. Plaintiffs have adequately alleged a sufficiently definite contract and a breach of that contract.

**2. Mutual Assent**

Curium argues that Plaintiffs failed to allege the mutual assent required for a contract to exist. (Doc. 30 at 26). Specifically, Curium argues that "Plaintiffs do not allege that Defendant 'affirmatively promised that its customer data would not be hacked, and such a promise may not be plausibly implied.'" *Id.* (citation omitted). But as noted above, Carey states a claim regardless of whether the contract affirmatively promised that customer data would not be hacked.

Under Missouri law, "[t]he essential elements of any contract...are 'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (internal quotations omitted). Unlike an express contract, which must be stated orally or in writing, a contract implied in fact arises if assent is manifested by conduct rather than words. *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, 108 n.7 (Mo. App. 2025); *see also Hodge v. St. Louis Union Tr. Co.,* 261 S.W. 67, 70 (Mo. 1924). "There is no difference in legal effect between an express contract and one implied in fact. The distinction lies merely in the manner of manifesting mutual assent." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 398 n.6 (Mo. App. 2015) (quoting *Bailey v. Interstate Airmotive, Inc.,* 219 S.W.2d 333, 338 (Mo. 1949)). Mutual assent is a meeting of the minds. *Chaganti & Assocs., P.C. v, Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006). "A court should determine whether such a meeting of the minds took place by 'looking to the intentions of the parties as expressed or manifested in their words or acts.'" *Id.* (quoting *L.B. v. State Comm. of Psychs.*, 912 S.W.2d 611, 617 (Mo. App. 1995)).

The Eighth Circuit has determined that, "[u]nder Missouri law, whether conduct manifests consent is determined by what a reasonably prudent person would be led to believe by that conduct, in light of all the circumstances and relations of the parties." *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 623 (8th Cir. 2021) (citation modified). "Conduct that is unambiguous in light of all relevant circumstances suffices to show consent." *Id.* (internal quotation marks omitted). That is, consent is implied if it is a "necessary deduction from the circumstances, general language or conduct of the parties." *Id.* (citing favorably *Maples v. United Sav. & Loan Ass'n,* 686 S.W.2d 525, 527 (Mo. App. 1985)). "But acts that are ambiguous in their character in light of the relevant circumstances are insufficient." *Id.* (internal quotation marks omitted). "Ordinarily, whether conduct manifests consent 'is a question to be resolved by the trier of fact.'" *Id.* (citation omitted).

In this case, Carey's factual allegations plausibly allege an implied contract. Carey alleges that Curium "further promised to comply with industry standards and to make sure that Plaintiffs' and Class Members' Private Information would remain protected." (Doc. 26 at ¶ 257). This plausibly alleges that Curium used "general language" that could provide the basis for an implied contractual promise. *Pietoso*, 4 F.4th at 623.

### 3. Breach of Implied Contract

Next, Curium argues that the breach of implied contract claim fails for lack of consideration. (Doc. 30 at 26). Curium argues that no consideration exists because Curium had a pre-existing statutory duty to protect Carey's information. (Doc. 30 at 25–27).[8] True, consideration is required for a contract to exist. *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 436 (Mo. App. 2010). And consideration cannot consist of something that a person is already legally required to do. *Weixeldorfer v.*

[8] Curium argues that Plaintiff "waived any counterargument" to this point by not responding. (Doc. 32 at 15). Defendants cite no binding authority for this proposition. And the Court does not read Plaintiffs' failure to respond to this argument as conceding a lack of consideration. On a Rule 12(b)(6) motion to dismiss, the Court considers whether a party alleged sufficient facts in its complaint to show a claim for relief is plausible. *Twombly*, 550 U.S. at 570. Therefore, the Court will consider whether Plaintiffs have alleged sufficient facts to show plausible consideration.

*City of Kansas City*, 718 S.W.3d 62, 72 (Mo. App. 2025). For instance, a medical provider's agreement to abide by HIPAA when they already must do so cannot be consideration for a contract. *Negron,* 2025 WL 2710014 at *11 (no consideration for agreement to abide by HIPAA); *K.A. by & through B.W. v. Children's Mercy Hosp.*, No. 18-00675-CV-W-ODS, 2019 WL 13207485 (W.D. Mo. May 17, 2019) (no consideration for agreement to keep data secure because mandated by HIPAA). But here, Curium's obligations under the alleged implied contract are not coextensive with HIPAA or any other statutory requirement cited by Curium. (Doc. 26 at ¶ 257) (Curium promised to abide by industry standards, not HIPAA). Thus, Plaintiffs alleged consideration.

**4. Actual Damages**

Curium also argues that the breach of implied contract claim must be dismissed because the Operative Complaint fails to properly allege actual damages. (Doc. 30 at 19). Not so.

"In Missouri, upon proving the existence of a contract and its breach, a party has made a submissible case and may at least recover nominal damages." *Clayton Ctr. Assocs. by Centor Co. v. Schindler Haughton Elevator Corp.,* 731 F.2d 536, 540 (8th Cir. 1984); *see also Fish v. Walworth*, No. 2:24-cv-00100, 2026 WL 2137153 (E.D. Mo. July 24, 2026)( (explaining that *Clayton* controls because "in the Eighth Circuit, the earliest precedent controls absent the Eighth Circuit reversing itself *en banc*"); *In re Luebbert*, 987 F.3d 771, 779 (8th Cir. 2021) (holding that, in Missouri, "courts have sustained breach of contract actions even in the absence of actual damages, awarding nominal damages instead"); *Dierkes v. Blue Cross & Blue Shield of Missouri,* 991

S.W.2d 662, 669 (Mo. 1999) ("Moreover, nominal damages are available where a contract and its breach are established.").

* * *

Thus, the Operative Complaint states a claim for breach of implied contract.

**C. The Operative Complaint fails to state a claim for Count IV, unjust enrichment.**

As an alternative to their breach of contract claim, Carey and Castillo bring a claim for unjust enrichment. (Doc. 26 at ¶ 269–280). Curium asks this Court to dismiss the unjust enrichment claim because the Operative Complaint does not allege either that Curium received a monetary benefit or that Plaintiffs did not receive a benefit in return. (Doc. 30 at 27). Curium argues that both of these elements are required for an unjust enrichment claim. *Id.*; *see also Carlsen v. Gamestop*, 833 F.3d 903, 912 (8th Cir. 2016) (affirming that a plaintiff did not state a claim for unjust enrichment where the plaintiff did not allege a "benefit conferred in exchange for protection of his PII"). This Court agrees with Curium.

"Unjust enrichment requires a showing that: '(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (quoting *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. App. 2010)). To state a claim for unjust enrichment when a plaintiff receives a benefit from the defendant as well, the plaintiff must allege that the benefit that forms the basis of the plaintiff's unjust enrichment claim was not exchanged for the benefits the plaintiff already received. *See Binkley v. Am. Equity Mortg., Inc.,* 447 S.W.3d 194, 199 (Mo. 2014) (no benefit conferred when plaintiff was not charged separately for service); *see also Kuhns v. Scottrade, Inc.,* 868 F.3d 711, 718 (8th Cir. 2017) ("[T]he [unjust enrichment] claim [ ] fails because the [complaint] does not allege that any specific portion of Kuhns's brokerage services fees went toward data protection.") (citation modified). Here, Carey and Castillo allege that they conferred a benefit on Curium and "reasonably expected that a portion of those profits would be allotted to securing Plaintiffs' and

Class Members' Private Information." (Doc. 26 ¶ 271). But this is an allegation that Carey and Castillo expected an additional benefit from Curium, not that they conferred a *separate benefit* on Curium for which they were uncompensated.

Moreover, it is not a plausible inference that Carey conferred a severable benefit on Curium. Carey alleges that the provision of PII was necessary for Curium's business. *Id.* at ¶ 270; *see also Mackey*, 2021 WL 3363174, at *10 ("It is necessary and reasonable for an employer to obtain an employee's PII in order to provide compensation and benefits."). Carey and Castillo cannot plead that they provided a separate benefit on Curium because the provision of PII was integral to the exchange of benefits they allege: Curium received a monetary benefit from Plaintiffs' PII, money, labor, and/or employment, and a portion of that monetary benefit would be used to secure Plaintiffs' PII. (Doc. 26 at ¶ 271). The Operative Complaint implicitly acknowledges the lack of severability when it alleges that Plaintiffs would not have done business with Curium if they knew of Curium's data security practices. *See id.* at ¶ 276. Carey and Castillo do not allege that they provided separate "payment" in exchange for data security. Rather, they allege that they believed data security was implicitly included in their broader agreements with Curium. Thus, the Court dismisses the Operative Complaint's unjust enrichment claim.

**D. Count V invasion of privacy is dismissed.**

Curium argues that Carey and Castillo's invasion-of-privacy claim should be dismissed because the Operative Complaint does not allege any facts to show that Curium obtained Carey's or Castillo's PII through unreasonable means. (Doc. 30 at 24.) The Court agrees.

Carey and Castillo brought their invasion-of-privacy claims under an intrusion-upon-seclusion theory.[9] An intrusion-upon-seclusion claim requires "(1)

[9] In the Operative Complaint, Carey and Castillo state their claim as the general tort of invasion of privacy. (Doc. 26 at 58.) Missouri law recognizes "four distinct torts" that fall under "the general tort of invasion of privacy," including intrusion upon seclusion. *Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers*, 427 F.3d 511, 524 (8th Cir. 2005). Defendant's Motion to Dismiss treats the invasion of privacy claim as an intrusion-upon-seclusion claim. (Doc. 30 at 24). Carey and Castillo do not dispute this characterization, and neither does this Court. (Doc. 31 at 22).

the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *Crader v. Wal-Mart Stores, Inc.*, No. 1:10-cv-176-SNLJ, 2010 WL 4930978, at *2 (E.D. Mo. Nov. 30, 2010) (quoting *St. Anthony's Med. Ctr. v. H.S.H*, 974 S.W.2d 606, 609–10 (Mo. App. 1998)).

Curium argues that the intrusion-upon-seclusion claim should be dismissed because it requires a defendant be "unreasonable in *obtaining* private information, not that a defendant [be] unreasonable in *handling* private information[.]" (Doc. 30 at 24.) Curium argues that the Operative Complaint alleges only that Curium mishandled the data, not that Curium obtained the data "through unreasonable means." *Crader*, 2010 WL 4930978, at *2; *see also* (Doc. 26 at ¶ 1.) The Court agrees.

The Operative Complaint fails to allege that Curium obtained either Castillo's or Carey's information through unreasonable means. *See St. Anthony's Med. Ctr.*, 974 S.W.2d at 610. Castillo gave Curium his personal information in the course of receiving health services from Curium. (Doc. 26 at ¶¶ 169–70.) Carey gave Curium her personal information as part of her employment. (Doc. 26 at ¶¶ 154–55.) It is reasonable to obtain PII in the ordinary course of business. *See Mackey*, 2021 WL 3363174, at *10 ("It is necessary and reasonable for an employer to obtain an employee's PII to provide compensation and benefits."); *St. Anthony's Med. Ctr.*, 974 S.W.2d at 610 (intrusion upon seclusion claim failed when a Hospital obtained medical records "[i]n the ordinary course of its business … as documentation of medical services rendered" and "did not unreasonably obtain defendant's medical records through deception, illegal activity, or other unreasonable methods[.]"). Because the Operative Complaint fails to allege that Curium obtained either Carey's or Castillo's information in an unreasonable manner, the Court dismisses Count IV.

Accordingly, the Court dismisses Count IV, Invasion of Privacy with prejudice.

## CONCLUSION

For the aforementioned reasons, Curium's Motion to Dismiss, Doc. 29, is **GRANTED** in part and **DENIED** in part. The Motion to Dismiss, Doc. 29, is

**GRANTED** with respect to Count IV Unjust Enrichment, Count V Invasion of Privacy, and Count VI Declaratory Judgment.

The Motion to Dismiss, Doc. 29, is **DENIED** as to Count II Negligence *per se* and Count III Breach of Contract.

The Motion to Dismiss, Doc. 29, is **GRANTED** as to Carey, and **DENIED** as to Castillo, with respect to Count I Negligence.

**SO ORDERED,**

This 30th day of September, 2026.

Maria A. Lanahan
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE